**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER SPATES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHELLE BUCKNER, *et al.*, | ) Case No. 4:22-cv-00011-MTS |
| | ) |
| Respondents. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Christopher Spates's Petition under 28 U.S.C. § 2254 for writ of habeas corpus. For the following reasons, Petitioner's § 2254 Petition is denied.

**I. Factual and Procedural History**

Angela Young was murdered on August 23, 2011. At that time, Leon Moss had pending charges for domestic assault and armed criminal action for acts he committed against Young. During that summer, Moss met with Petitioner and other associates to devise a plan to murder Young. Moss told his associates that he would pay $10,000 for Young to be killed to prevent her from testifying against him in the domestic assault case because he was facing a significant amount of time and did not want to go back to prison. Donald White told Moss he could get it done. At one of the meetings, Raymond Jones was introduced to Petitioner, and Jones agreed to drive Petitioner to murder Young.

During the evening of August 23, 2011, Young pulled her car into a White Castle parking lot in north St. Louis. *Id.* Nearby video surveillance recorded a white truck following her car. At

around 11:30 p.m., Petitioner got out of the white truck and started walking towards Young's car. *Id.* When Petitioner reached the driver's side window of Young's car, he pulled out a gun and shot through it repeatedly. *Id.* He then ran into a nearby alley and eventually drove off in the white truck. *Id.*

Young died at the scene, having been shot numerous times in her head and neck. Moss was contacted by the police because he was listed as Young's emergency contact. Moss said he did not want the police to come to his home, but he agreed to go to police headquarters to speak with them. Moss never showed up. However, he did return a phone call from the police, telling them he would not be coming in because his attorney told him not to go. Police began investigating Moss for his role in the murder. The Police later found the white pickup truck involved in the murder outside of a property owned by Moss. The police obtained a search warrant for the truck and found fingerprints on the exterior passenger side of the truck that matched Petitioner.

Petitioner, Moss, and White were tried by jury in a joint criminal trial. Petitioner was found guilty of first-degree murder and armed criminal action. He was sentenced to life without the possibility of parole for the murder, and 30 years of imprisonment for armed criminal action. On August 2, 2016, the court of appeals affirmed the trial court on direct appeal. *State v. Spates*, 494 S.W.3d 646 (Mo. App. E.D., 2016). Petitioner raised points related to the denial of severance, denial of access to federal document discovery, the admissibility of phone records, and the testimony of a state witness. Doc. [4-7]. Petitioner then filed a motion under Supreme Court of Missouri Rule 29.15 for post-conviction relief. After an evidentiary hearing, the state motion court entered a judgment denying post-conviction relief on September 30, 2019. Petitioner appealed and the court of appeals affirmed the denial of Petitioner's motion for post-conviction relief. *Spates v. State*, 618 S.W.3d 717 (Mo. App. E.D., 2021). On January 4, 2022,

2

Petitioner filed this action for habeas relief. Doc. [1].

## II. Legal Standard

The proper standard of review for habeas relief is dependent upon whether the ground for relief was adjudicated on the merits in state court proceedings or is procedurally barred.

### A. Claims Reviewed on the Merits

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), though such relief is "limited and deferential." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under AEDPA, § 2254(d), habeas relief is only permissible if the state court's determination:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established Federal law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of the [Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A decision involves an "unreasonable application" of clearly established law if " the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," *id.* at 141, or "if the state court unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). When reviewing whether a state court decision involves an "unreasonable determination

3

of facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1).

### B.     Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. *Id.* at 689. To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. at 696. To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Under AEDPA, federal courts must then give substantial deference to the state court's predictive judgment.

4

So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id.* at 100-01. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'*s* deferential standard." *Id.* at 105. Furthermore, a state court's findings of fact, made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

### C. Procedurally Defaulted Claims

In Missouri, a claim must be presented "at each step of the judicial process" to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). To avoid default, a state inmate must have fairly presented his or her claims to the state court during direct appeal or in post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). However, a ground that is procedurally barred may be reviewed on the merits if the petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at. . .trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

5

### III. Discussion

Petitioner asserts 12 grounds for relief in his Petition; however, some grounds have been grouped together when applicable.

**A. Ground 1: Petitioner claims the Missouri trial court erred in denying Petitioner's attorney access to federal documents related to Darryl Clemons's cooperation with federal prosecutors and law enforcement authorities in a federal drug-trafficking conspiracy case. Petitioner claims this violated his right to due process and opportunity to confront adverse witnesses under the Sixth and Fourteenth Amendments of the United States Constitution.**

Petitioner challenges the trial court's decision to deny access to certain federal documents relating to Clemons's cooperation with federal prosecutors and law enforcement in a federal drug-trafficking conspiracy case. Petitioner asserts that information in the documents may have been helpful in the cross-examination of Clemons, a witness for the prosecution. This claim was set forth and subsequently denied on direct appeal. Doc. [4-9]; *see also Spates*, 494 S.W.3d at 646.

The court of appeals reviewed the federal documents and found that the trial court did not abuse its discretion in denying access to them. The records contained information regarding "numerous individuals and multiple crimes over the span of several decades, all unrelated to the case." Doc. [4-9] at 5. The court of appeals found that the trial court "perfectly characterized the records as a 'cornucopia of- from the '90s to the present of dope, money and gun wars in the metropolitan area as it extends outward from people who send dope and money into the St. Louis area[,]'" and agreed that the information contained therein was a "morass, a swamp that [the court] [did not] want to go into." *Id.*

Petitioner argues that the court of appeals recognized the documents "had some measure of 'probative' value" but did not analyze whether the material would have changed the outcome of his trial. Doc. [1] at 11-12. The court of appeals found that the trial court did not abuse its

6

discretion. Petitioner's charged crime was only mentioned tangentially, and that "the federal documents were neither favorable nor material, and that the risk of prejudice and confusion from collateral matters greatly outweighed whatever minimal probative value they had." Doc. [4-9] at 5-6. Regardless, Petitioner was able to impeach Clemons without the undisclosed documents and the jury was informed about the immunity Clemons held due to his cooperation in the investigation and for his testimony at trial. *Id.* at 5. The court of appeals finding that the trial court did not abuse its discretion in denying access to the records was not contrary to, or involved an unreasonable application of, clearly established Federal law, it did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the proceeding and was not a miscarriage of justice. Ground 1 is denied.

> **B.     Ground 3: Petitioner claims the trial court erred in denying his motion for a separate trial from that of his co-defendants, White and Moss. Petitioner claims this violated his right to due process and opportunity to confront adverse witnesses under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.**

Petitioner's trial counsel moved for severance and the request was denied after a hearing. Petitioner contends that the joint trial caused evidence to be admitted that would have been inadmissible if his case had been severed from his co-defendants. Doc. [1] at 15. Petitioner states that the evidence was prejudicial but fails to identify the objectionable evidence outside of generally stating in the supporting facts, "most importantly Mr. Clemons' testimony regarding purported extrajudicial conversations involving Mr. Moss, Mr. White, and Mr. Jones." *Id.* This claim was set forth and subsequently denied on direct appeal. Doc. [4-9]; *see also Spates*, 494 S.W.3d at 646. The court of appeals determined that Petitioner's point relied on and argument section of his brief were vague, lacking specific factual assertions and page references to relevant portions of the record to support them.

7

Here, to comply with § 2254(c), a petitioner must state specific, particularized facts for each ground with sufficient detail to enable a district court to determine whether, on its face, the petition merits further habeas review. *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990). The petition "shall specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified." § 2254(c). Petitioner fails to identify any specific objectionable evidence outside of the vague reference to Clemons's testimony regarding the conversations between White, Moss, and Jones. As the court of appeals stated, without a more clear-cut guide to what evidence was being objected to, the court was forced to take on an advocacy role in favor of Petitioner.

In its Response to Petitioner's argument, the State assumed Petitioner was referring to the testimony on pages 1198-1210 of the trial transcript, Doc. [4-3] at 407-419, regarding Clemons's testimony about the overheard discussions between Moss, White, and Jones. The court of appeals concluded that Petitioner failed to affirmatively show that he was prejudiced by the joint trial. Doc. [4-9] at 3. The trial court explicitly instructed the jury not to consider evidence of the discussion against Petitioner when this testimony occurred. Jurors are presumed to follow the court's instructions, and Petitioner has offered no proof contrary to that presumption.

Petitioner bears a "heavy burden" in challenging the trial court's failure to sever his trial from that of his codefendant. *Hollins v. Dep't of Corr.,* 969 F.2d 606, 608 (8th Cir. 1992). This Court will not grant relief to a habeas petitioner on this issue unless he can establish that the failure to grant severance rendered the trial "fundamentally unfair." *Id.* (quoting *Johnson v. Dugger*, 817 F.2d 726, 728 (11th Cir. 1987)). Petitioner did not meet the "heavy burden" of establishing that the failure to grant severance rendered the trial "fundamentally unfair." *Hollins*,

8

969 F.2d at 608. The decision of the court of appeals finding that Petitioner failed to show that the joint trial prejudiced him, was not contrary to, or involved an unreasonable application of clearly established Federal law nor did it result in a decision based on an unreasonable determination of the facts. Ground 3 is denied.

### C. Grounds 2, 5, 6, 7, and 8 concerning Clemons trial testimony.

Petitioner asserts five grounds regarding the trial court's rulings made during the testimony of State witness, Clemons. Petitioner claims the trial court erred by allowing Clemons to testify regarding extrajudicial statements allegedly made by co-defendants, Moss and White. Additionally, he claims the trial court erred by allowing Clemons to testify, and then not declaring a mistrial after Clemons testified that: (1) the motive in the case was the assault accusation against Moss; (2) Moss orchestrated the murder to avoid going back to jail; (3) defendants were involved in a drug trafficking conspiracy; and (4) Moss and White met in prison.

"In the habeas context, rules of evidence and trial procedure are usually matters of state law." *Bucklew v. Luebbers*, 436 F.3d, 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, the admissibility of evidence at trial is ordinarily a matter of state law and "will not form the basis for federal habeas relief." *Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988) (citing *Manning-El v. Wyrick*, 738 F.2d 321, 322 (8th Cir.), *cert. denied* (1984)). Because the admissibility of evidence is a matter of state law, such issues are only considered in federal habeas when determining whether an "alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Fitzgerald v. Armontrout*, 963 F.2d 1062, 1064 (8th Cir. 1992); *see Logan v. Lockhart*,

9

994 F.2d 1324, 1330 (8th Cir. 1993). A state court's evidentiary ruling will only be reversed if petitioner shows there is a reasonable probability that the error complained of affected the outcome of the trial. *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

> **Ground 2: Petitioner claims the trial court erred by allowing Clemons to testify regarding extrajudicial statements allegedly made by Moss and White. Petitioner claims this violated his right to due process and opportunity to cross-examine adverse witnesses under the Sixth and Fourteenth Amendments of the United States Constitution.**

Petitioner alleges that his rights to due process and to have a meaningful opportunity to cross-examine witnesses were violated by the state trial court allowing Clemons to testify regarding the extrajudicial statements of Moss and White. Petitioner argues that Clemons's testimony regarding a meeting between White and Jones was the State's only proof of a conspiracy to commit murder. Doc. [1] at 13. The court of appeals asserted that Petitioner abandoned this claim by relying on the Confrontation Clause of the Sixth Amendment in his point relied on, but not mentioning the Confrontation Clause in the argument section of his briefing regarding the admissibility of the statements.[1] Rather, Petitioner's argument section discussed the insufficient independent evidence of a conspiracy to render the statements admissible under the co-conspirator exception to the hearsay rule. Doc. [4-7] at 39-43. The court of appeals found this claim to also be abandoned since the issue was not encompassed in the point relied on.[2] Nevertheless, the court of appeals still considered Petitioner's claims. Doc. [4-9] at 7.

Petitioner acknowledged in his Petition that the trial court had explicitly instructed the jury not to consider the evidence at issue against Petitioner. Doc. [1] at 14.[3] The court of appeals found

---

[1] When an argument is raised in a point relied on in state court, but not developed in the argument section, the argument is abandoned. *See* Doc. [4-9] at 6.

[2] "We do not consider arguments and issues raised in the argument portion of the brief that were not encompassed in the point relied on." Doc. [4-9] at 7.

[3] During trial, defense counsel moved to preclude testimony made by alleged co-conspirators on the basis that the statements were only proof of a conspiracy to commit the charged murder. Doc. [1] at 13. The trial court overruled the objections and allowed the testimony. *Id.* The trial court issued an instruction to the jury not to consider the complained-of evidence against Petitioner. Doc. [4-9] at 7.

the jury instruction to be sufficient to prevent prejudice against Petitioner. Doc. [4-9] at 7. Petitioner's entire argument is a conclusory allegation that "it was unreasonable as a matter of both fact and law to believe that the instruction could prevent the jury from considering that evidence in the course of reaching their verdict on the charges against him." Doc. [1] at 14. The court of appeals' finding that the jury instruction was sufficient to prevent prejudice against Petitioner was neither contrary to or involved an unreasonable application of clearly established Federal law nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented. Ground 2 is denied.

**Grounds 5, 6, 7, and 8: Petitioner claims the trial court erred in admitting Clemons's testimony that Petitioner alleges constituted evidence of uncharged crimes. Petitioner claims in each ground that his right to due process under the Fourteenth Amendment of the United States Constitution was violated.**

The court of appeals determined that Petitioner's claims were abandoned because Petitioner failed to adequately address the alleged errors in the argument sections of his brief.4  However, the court of appeals provided an ex gratia review of the claims and found that "in each instance, the statement was volunteered, isolated, and never used by the prosecution," and therefore, Petitioner was not prejudiced and the trial court did not abuse its discretion in denying Petitioner's requests for mistrial. Doc. [4-9] at 9.

Generally, under Missouri law, evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc 1995). When reviewing a claim of inadmissible prior bad-act testimony, the state courts look to five factors to determine whether the admission

---

[4] The court of appeals found Petitioner's appellate brief to be simply a recitation of purported testimony, general principles of law, and a conclusory statement that the evidence should not have been admitted. Doc. [4-9] at 8. The court found that Petitioner fell short on showing how the legal principles interacted with the facts of the case. *Id.*

11

of the testimony resulted in prejudice to the defendant. *State v. Goff*, 129 S.W.3d 857, 866 (Mo. banc 2004). The factors are: 1) [w]hether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement, and instructed the jury to disregard the volunteered statement; and 5) whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt. *Id.* Applying these factors, the court of appeals found no prejudice resulted from Clemons's complained-of statements because "[i]n each instance, the statement was volunteered, isolated, and never used by the prosecution" and that the trial court did not abuse its discretion in denying Petitioner's request for a mistrial. Doc. [4-9] at 9.

The court of appeals analyzed each piece of evidence Petitioner claimed had value outside of solely proving the Petitioner and co-defendants' criminal disposition. Clemons testified that Moss talked "about, like, why he wanted it done." *Id*. Clemons testified it was because Moss was accused of "beating her up" and she was going to testify against Moss (Ground Five). Petitioner argues this testimony was offered solely to prove Moss's bad character and disposition to violence. Doc. [1] at 18. However, this testimony provided insight into motive. Therefore, the testimony did more than solely proving criminal disposition. The court of appeals found that the prosecution's questions when the statement arose were merely clarifying questions addressing why Moss wanted Young dead rather than probing questions about the underlying charge and were cumulative to other evidence. Doc. [4-9] at 10.

The same reasoning is applied to Petitioner's objection to Clemons's stating Moss did not want to go back to prison (Ground Six). Doc. [4-3] at 425. The testimony contributes to developing the motive of the murder. The comment was not in response to a question by the prosecutor about the uncharged crimes, but rather a question about how the murder was brought up. "The prosecutor did not revisit the issue, but instead asked a leading question to move Mr. Clemons away from the topic." Doc. [4-9] at 11.

Petitioner also argues that Clemons's statement "it was drug talk, too," in response to the prosecutor's question asking if money was brought up during a meeting where the murder was discussed, made jurors likely to view Petitioner "as a criminal in the practice of conspiring with his present co-defendants" (Ground Seven). Doc. [1] at 20. The comment "drug-talk" was a vague remark that was not solicited by the prosecutor's question. Doc. [4-3] at 431. The prosecutor offered to have the statement stricken from the record and moved Clemons away from that topic. The court of appeals found that Clemons's vague comment was not enough to be characterized as clear evidence associating the Petitioner with other crimes and noted that Petitioner did not seek any curative relief, such as an instruction to the jury to disregard the testimony.

Lastly, Petitioner claims Clemons's testimony that Moss and White met in prison violated the pretrial order excluding evidence of uncharged crimes as well as Petitioner's Fourteenth Amendment right and Sixth Amendment's guarantee of trial by an impartial jury promising that conviction shall only occur upon proof of their guilt of the charged offense beyond a reasonable doubt (Ground 8). Doc. [1] at 20. The statement in question was not elicited by the prosecution, but rather was made during cross-examination. Doc. [4-3] at 553. During defense counsel's cross-examination of Clemons, he asked Clemons if he remembered telling the police that he believed that

13

White and Moss met through a man named Anthony. Clemons responded, "vaguely." Doc. [4-9] at 13. Defense counsel responded, "vaguely?" Clemons answered, "I think I said Don [White] met Leon [Moss] in prison. Vaguely, I do, but I don't know Leon." *Id.*  The court of appeals determined that this statement did not prejudice Petitioner because the statement was not elicited by the prosecution, was isolated, and the trial court immediately instructed the jury to disregard the statement. As addressed earlier, jurors are presumed to follow instructions from the court if there is not a showing otherwise. *Weeks*, 528 U.S. at 234.

Even if Petitioner's claims had not been abandoned, the court of appeals found that the trial court did not abuse its discretion by allowing Clemons's testimony. The finding was not contrary to or involved an unreasonable application of clearly established Federal law nor did it result in a decision based on unreasonable determinations of  the facts. Petitioner has failed to show there  is a reasonable probability that the errors complained of affected the outcome of the trial. *Anderson*, 44 F.3d at 679 (8th Cir. 1995). Grounds 5, 6, 7, and 8 are denied.

**D.     Ground 4: Petitioner claims the trial court plainly erred in admitting Detective Stephen Kaiser's testimony identifying the phone numbers belonging to Delmore Holmes and Raymond Jones and admitting the respective phone records. Petitioner alleges this error deprived him of his right to due process and a meaningful opportunity to confront adverse witnesses under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.**

Det. Kaiser testified about an out-of-court conversation in which Holmes, who Det. Kaiser believed owned the white truck implicated in the crime, provided Det. Kaiser with his telephone number. Det. Kaiser then obtained phone records from the phone number which showed the phone making and receiving calls in the vicinity of the murder, including a call to Moss. The prosecution also introduced evidence about two calls from Jones to Holmes in the days prior to the murder, and a call about an hour after the murder. Petitioner did not preserve the issue, so the court of appeals reviewed Petitioner's claim for plain error and found that

14

admitting the evidence regarding the phones was not an "outcome determinative error" and therefore, Petitioner did not suffer undue prejudice. Doc. [4-9] at 14-15.[5]

Petitioner contends that the statements regarding the phone numbers were used to prove communications between Holmes, Jones, and Moss prior to and immediately after the murder. Doc. [1] at 16. The court of appeals correctly identified that the evidence at issue connected Moss to the murder, not Petitioner. Doc. [4-9] at 15.[6]

Petitioner also claimed that the testimony about the phone numbers was outcome-determinative because the testimony linked Moss to Jones, who drove the truck the night of the murder. *Id.* at 14. Other properly admitted evidence also made that connection, so the testimony regarding the phone numbers was merely cumulative. *Id.* at 15.

Regarding the admission of Holmes' phone number, there was no objection made at trial to the testimony that Holmes gave Det. Kaiser his phone number. Additionally, defense counsel explicitly stated there was "no objection" when the State moved to admit the records associated with the number. Further, Petitioner did not include the matter in his motion for new trial. The court of appeals found that by stating there was "no objection" to the admission of the records at trial, Petitioner affirmatively waived appellate review of the admission of evidence, including plain error review. Doc. [4-9] at 14.

Petitioner has neither shown cause nor prejudice, or how failure to consider this claim would result in a fundamental miscarriage of justice. Therefore, Ground 4 is procedurally defaulted and denied.

---

[5] A state court's plain error review of a defaulted claim does not cure procedural default. *Clark v. Bertsch*, 780 F.3d 873, 876-877 (8th Cir. 2015). Petitioner's claim may only be reviewed on the merits if he shows cause and prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Thompson*, 501 U.S. at 750.
[6] The court of appeals also acknowledged that Petitioner argued in four other points to the court of appeals that "no cell phone or phone records tied him to the crime." *Id.*

15

> **E. Ground 9: Petitioner claims the state motion court erred in denying his claim that his attorney was ineffective for allegedly failing to investigate and prepare for trial due to a financial conflict of interest. Petitioner claims this denied him of his right to effective assistance of counsel, a fair trial, and due process under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.**

Petitioner claims that trial counsel was ineffective due to an alleged financial conflict of interest from Petitioner not paying his fees in full. Doc. [4-14] at 5. At the evidentiary hearing on Petitioner's Rule 29.15, trial counsel testified that Petitioner's failure to pay the full fees had not affected her investigation in Petitioner's case, the decision to move forward with trial, or trial strategy. Doc. [4-6] at 20. Trial counsel recalled discussing trial strategy and reviewing evidence with Petitioner. *Id.* Trial counsel also recalled sitting through "hours and hours" of depositions and joining in on motions that co-counsel was filing with the trial court. *Id.* at 10-11. Trial counsel commented on her lack of personally written pretrial motions by stating that "co-counsel was inundating the Court with pretrial motions." *Id.* at 11. However, she did attend joint hearings where everyone had the chance to argue their points. *Id.* Trial counsel stated that she did not recall investigating an alibi defense, but that her file provided two notes, one stating Petitioner said he may have been babysitting that night, and another stating he did not remember where he was August of 2011. *Id.* at 11-12. Trial counsel further stated that she did not get information on the alibi, so she was not able to investigate evidence of an alibi. *Id.* at 24. The court of appeals deferred to the motion court's findings that Petitioner's trial counsel provided credible testimony at the evidentiary hearing, while Petitioner's testimony regarding prejudice was "speculative and not credible." Doc. [4-14] at 6.

Petitioner has not shown any alleged deficiencies of his trial counsel on this issue that would have changed the outcome of the trial and there is no reasonable argument that counsel

16

failed to satisfy the *Strickland* standard. Therefore, Petitioner cannot satisfy the "doubly differential" standard required to obtain habeas relief on claims regarding ineffective assistance of trial counsel. The court of appeals' finding that Petitioner failed to show an actual conflict of interest that adversely affected trial counsel's performance was not unreasonable, nor was it based on an unreasonable determination of the facts. Ground 9 is denied.

> **F.     Grounds 10, 11, 12: Petitioner claims the Rule 29.15 state motion court erred in denying his claim that his attorney was ineffective for failing to call Petitioner's three sisters - Erica Spates, Tijuana Spates, and Oriel Spates - as alibi witnesses. Petitioner claims this denied him of his right to effective assistance of counsel, a fair trial, and due process under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.**

When reviewing a claim of ineffective assistance of counsel, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Petitioner claims that his trial counsel was ineffective for failing to call Petitioner's three sisters to testify that Petitioner was at a family residence playing cards on the night of the crimes. Petitioner testified that he told trial counsel about the proposed alibi. Doc. [4-6] at 72. Petitioner also stated that he told trial counsel about the alibi after he remembered the alibi more than six months after the night of the crimes, and that trial counsel said she would look into it. *Id.* at 74. As addressed with Ground Nine, trial counsel testified that she did not investigate the alibi because she did not get information about the alibi that would have allowed her to investigate any evidence. *Id.* at 24.

17

To prevail on a claim of ineffective assistance of counsel based on trial counsel's failure to call a witness, the movant must demonstrate "(1) counsel know or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Hosier v. State*, 593 S.W.3d 75, 88 (Mo. banc 2019). "If a potential witness would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance." *Id.* (quotation omitted).

The court of appeals determined that "the trial court explicitly found there was no credible evidence that Movant told Counsel about his alleged alibi; Movant's testimony was not credible; and the proposed testimony of Movant's Sisters was not credible and did not unequivocally support an alibi." Doc. [4-14] at 8. The motion court ultimately found that the testimony of Petitioner's sisters would not have created a viable defense. *Id*. The state motion court's conclusion was reached on the determination of the lack of credibility of the witnesses. Choosing to not call a witness due to their lack of credibility is a reasonable trial strategy. Additionally, Petitioner has not shown any alleged deficiencies of his trial counsel that would have changed the outcome of the trial, and there is no reasonable argument that counsel failed to satisfy the *Strickland* standard. Therefore, Petitioner cannot satisfy the "doubly differential" standard required to obtain habeas relief on his ineffective assistance of trial counsel claims. The court of appeals' finding that Petitioner's trial counsel was not ineffective for choosing to not call Petitioner's three sisters as alibi witnesses was not unreasonable or based on an unreasonable determination of the facts. Grounds 10, 11, and 12 are denied.

## CONCLUSION

Accordingly, all of Petitioner's Grounds for relief are denied.

**IT IS HEREBY ORDERED** that the Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, Doc. [1], is **DENIED.**

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with the Memorandum and Order is entered on this same date.

Dated this 28th of March, 2025

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE